UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RAUL KU,<br><br>        Plaintiff,<br><br>    v.<br><br>ARGENT HOTEL MANAGEMENT, LLC, et al.,<br><br>        Defendants. | Case No. 20-cv-05026-LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: ECF No. 10 |

## INTRODUCTION

This employment-discrimination case — based on race and disability discrimination, among other claims, in violation of state law — is in federal court because the defendants assert removal jurisdiction.[1] Plaintiff Raul Ku, a union member subject to a collective-bargaining agreement ("CBA"), works as a prep cook at the Park Central hotel (managed by Argent Hotel Management), and he claims that his employer harassed him, cut his hours in violation of its seniority policy even though it was ordered (after union-sponsored mediation) to follow company policy, suspended him, and continues to monitor his activities at work.[2] He brings claims of racial and disability

---

[1] Notice of Removal – ECF No. 1; Compl. – ECF No. 1-1 at 6 (¶ 1). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. – ECF No. 1-1 at 7–9 (¶¶ 10–23).

ORDER – No. 20-cv-05026-LB

discrimination, retaliation, and harassment in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(a) (claims one through six), claims of retaliation in violation of FEHA and California's Whistleblower Protection Act, Cal. Lab. Code § 1102.5 (claims eight and nine), and a claim of intentional infliction of emotional distress ("IIED") (claim seven).[3] His employer timely removed the case to federal court, asserting federal-question jurisdiction on the ground that § 301 of the federal Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185(a), preempts the plaintiff's claims because they are predicated on the CBA.[4]

The plaintiff moved to remand on the ground that his complaint alleges state-law discrimination, retaliation, and harassment claims that are not preempted under the LMRA (because they are not grounded in the CBA, do not require an interpretation of it, and instead are asserted under FEHA and the common law (for the IIED claim)).[5] The defendants counter that the complaint charges them with violating the plaintiff's seniority rights, suspending him without just cause (a grievance awaiting arbitration under the CBA), and continued unnecessary monitoring of his activities at work.[6] The claims are, they contend, are based on rights in the CBA, require interpretation of it, and thus are preempted by the LMRA.[7]

The court grants the motion to remand because there is no federal-question jurisdiction. The claims involve allegedly unlawful conduct by an employer in violation of state law (not the CBA), do not require interpretation of the CBA, and thus are not preempted by § 301 of the LMRA.

---

[3] *Id.* at 10–22 (¶¶ 24–91).

[4] Notice of Removal – ECF No. 1 at 4–5 (¶¶ 9–10).

[5] Mot. – ECF No. 10 at 4.

[6] Opp'n – ECF No. 1 at 6.

[7] *Id.* at 6, 21.

**STATEMENT**

**1. The Complaint's Allegations About Work Conditions**

The plaintiff began work as a prep cook at the Park Central hotel in San Francisco in May 2007.[8] In 2016, sous chef Frank Turab and executive chef Marcelo Salinas began harassing him.[9] For example, Mr. Turab cursed at the plaintiff, called him a son of a bitch, targeted him after the plaintiff complained to Mr. Turab about his profanity, yelled at him for filling yogurt cups unevenly (and threw one down on the table), and — in response to the plaintiff's asking about work to do — pointed a finger to the plaintiff's face and "motioning like he wanted to punch him."[10] Mr. Salinas told the plaintiff that he "did[n't] speak English well," "did[n't] have the qualifications to do th[e] job," and gave a co-worker hours (that should have been the plaintiff's) because she "sp[oke] English better."[11]

Messieurs Turab and Salinas cut the plaintiff's hours, in violation of the company's seniority policy, and the plaintiff complained to HR.[12] "After a union sponsored mediation, Defendants were ordered to follow the company policy of seniority and classification in allocating hours. However, Defendants continued to violate their own policy and the terms of the mediation agreement and harass and retaliate against Plaintiff by continuing to cut his hours."[13] In addition to giving the co-employee the plaintiff's hours, the employer gave her preferential treatment by ignoring her intoxication and tears at work on October 28 and 29, 2017.[14]

---

[8] Compl. – ECF No. 1-1 at 7 (¶ 10).
[9] *Id.* at 8 (¶ 13).
[10] *Id.* (¶¶ 13–15).
[11] *Id.* (¶ 16).
[12] *Id.* (¶ 17).
[13] *Id.*
[14] *Id.* at 8–9 (¶ 18).

ORDER – No. 20-cv-05026-LB    3

In September 2018, Mr. Salinas and the plaintiff had an argument, and Mr. Salinas told the plaintiff to go home.[15] When the plaintiff refused to leave, Mr. Salinas called security and falsely reported that the plaintiff almost punched him.[16] The defendants suspended the plaintiff.[17]

The plaintiff "complained to human resources several times" about Messieurs Turab's and Salinas's behavior "and about racial discrimination and a racially charged hostile work environment."[18] As a result, his "work hours were reduced, and he continues to be harassed by Turab[, who] . . . regularly and unnecessarily monitors his movements," including when the plaintiff uses the bathroom, and when he takes breaks."[19] Mr. Turab "orders" the plaintiff "not to speak with anyone in the kitchen, and otherwise engages in harassing conduct."[20]

The defendants "have refused to stop the racially charged hostility."[21] "Due to the stress of a hostile work environment, Plaintiff went to see a doctor several times and even suffered an avulsion laceration on his left index finger. As a result, Plaintiff took medical leaves on three separate occasions throughout his employment in order to heal from his injuries."[22] He remains a hotel employee.[23]

## 2. The CBA

A collective-bargaining agreement governs the parties' relationship.[24] It has the following relevant provisions.

---

[15] *Id.* at 9 (¶ 19).
[16] *Id.*
[17] *Id.*
[18] *Id.* (¶ 20).
[19] *Id.* (¶ 21).
[20] *Id.*
[21] *Id.* (¶ 22).
[22] *Id* (¶ 23).
[23] Opp'n – ECF No. 11 at 7; Mot. – ECF No. 10 at 5 (filed lawsuit to address continued discrimination, harassment, and retaliation); Compl. – ECF No. 1-1 at 9 (¶ 21) ("continues to be harassed").
[24] CBA, Exs. D & F to Notice of Removal – ECF Nos. 1-4 & 1-6; Liebig Decl. – ECF No. 11-1 at 2 (¶ 3) & Exs. A–B – ECF Nos. 11-2 & 11-3.

The "seniority policy" is as follows:

> Employees within a classification with the greatest classification seniority within a room or department as the case may be shall have the preference of scheduled shifts which shall include days off, and shall have a choice of available vacation periods based on Hotel seniority. Nothing contained in this Section shall be construed to interfere with a Hotel's right to establish the hours and days of operation and the number of employees to be scheduled, but employees shall have preference for such available schedules as determined by the Employer in accordance with seniority and other provisions of this Agreement.[25]

The CBA addresses how calculating seniority includes an assessment of leaves of absence, promotions, job classifications, and other factors.

> It is further understood, however, that employees on a leave of absence, vacation, PTO/ESL, or other leave shall be replaced provided business levels, availability of replacement workers, and staffing patterns warrant such a replacement.
>
> Management retains the right to staff and assign work in accordance with the terms of the collective bargaining agreement and thus the Union will bear the burden of establishing that an unreasonable workload exists.[26]

The CBA addresses the supervision of prep cooks:

> Cooks of this classification need not be under the supervision of a station cook. They may perform all of the skilled tasks required in the art of cooking. They may be made responsible during their shift for any subdivision of a kitchen station, such as soup, fish, cold meat, salads, carver, etc.[27]

The CBA addresses logistics during the shift: employees must schedule their work to allow for a fifteen-minute clean-up and restock period, and a cook's schedule must allow 30 minutes to clean up the station before the kitchen closes.[28]

The CBA also addresses disciplinary suspensions: the hotel "may only discipline, suspend, or discharge for reasons of just cause."[29] It sets out the grievance procedures:

> Should disputes arise between the employee or the Union and the Employer regarding the interpretation and/or application of the specific terms of this Agreement and/or disciplinary action, including discharge taken pursuant to alleged violations of house rules, work rules,

---

[25] CBA § 5.2(a), Ex. A to Leibig Decl. – ECF No. 11-2 at 69.

[26] CBA § 35, *id.* at 90.

[27] CBA § 7, *id.* at 92.

[28] CBA § 5, *id.* at 91–92.

[29] CBA § 13, *id.* at 88.

ORDER – No. 20-cv-05026-LB   5

procedure, and/or terms and conditions of this Collective Bargaining Agreement, such disputes shall be processed in the time and manner prescribed herein.[30]

The CBA's grievance procedures include informal steps and a "Grievance Mediation hearing."[31]

### 3. The Plaintiff's Grievances

On May 23, 2017, the plaintiff filed a grievance alleging a violation of his seniority rights.[32] On July 19, 2017, the union and the hotel entered into a settlement agreement (1) clarifying the plaintiff's his job duties, classification, schedule, and workload and paying him eight hours of back pay and (2) clarifying that Mr. Turab was responsible for observing, giving feedback and job assignments but could not provide feedback that would potentially lead to discipline (because that feedback is management's responsibility, not Mr. Turab's).[33]

There are three more grievances. On May 21, 2018, the union and the hotel entered into a settlement agreement regarding the plaintiff's workload and interactions with Mr. Salinas.[34] On July 6, 2018, they entered into a memorandum of understanding in connection with the plaintiff's grievance about his schedule and job classification.[35] Finally, on September 18, 2018, the plaintiff filed a grievance claiming that he was disciplined (in the form of suspension) without proper cause, and on October 31, 2018, he requested arbitration.[36] The grievance is pending arbitration pursuant to the CBA's grievance procedures.[37]

---

[30] CBA § 12; *id.* at 30.

[31] CBA § 12, *id.* at 31.

[32] Liebig Decl. – ECF No. 11-1 at 2 (¶ 4); Grievance Mediation and Notice Request, Ex. C to Liebig Decl. – ECF No. 11-4.

[33] Liebig Decl. – ECF No. 11-1 at 2–3 (¶ 5); Settlement Letters, Exs. D and E to Liebig Decl. – ECF Nos. 11-5, 11-6.

[34] Liebig Decl. – ECF No. 11-1 at 3 (¶ 6); May 21, 2018 GSA, Ex F to Liebig Decl. – ECF No. 11-7.

[35] Liebig Decl. – ECF No. 11-1 at 3 (¶ 6); July 6, 2018 MOU, Ex G to Liebig Decl. – ECF No. 11–8.

[36] Liebig Decl. – ECF No. 11-1 at 3 (¶7); Submission to Arbitration and Grievance Notice, Ex. H to Liebig Decl. – ECF No. 11-9.

[37] Liebig Decl. – ECF No. 11-1 at 3 (¶ 7); Submission to Arbitration and Grievance Notice, Ex. H to Liebig Decl. – ECF No. 11-9.

### 4. Relevant Procedural History

The plaintiff timely exhausted his administrative remedies with the Department of Fair Employment and Housing within one year of filing his lawsuit in state court and received a right-to-sue letter.[38] Cal. Gov. Code. §§ 12960 & 12965(b). On April 22, 2020, he filed his complaint in state court, raising state-law claims of racial and disability discrimination, retaliation, and harassment in violation of FEHA (claims one through six), retaliation in violation of FEHA and the California Labor Code (claims seven and eight), and IIED (claim seven).[39] On July 24, 2020, the defendants timely removed the lawsuit (within 30 days of service) to federal court, alleging federal-question jurisdiction and preemption of the claims under § 301 of the LMRA.[40] The plaintiff moved to remand the case to state court on the ground that § 301 does not preempt his state law claims.[41] The court held a hearing on October 1, 2020. All parties consented to the undersigned's jurisdiction.[42]

## ANALYSIS

The plaintiff's claims generally are about race and disability discrimination, harassment, retaliation, and the related IIED. Resolution of the claims depends on the employer's motive, not the CBA, and even if some reference to the CBA is relevant for context, the claims are not preempted. There is no federal-question jurisdiction, and the court grants the plaintiff's motion to remand the case.

The parties agree that removal jurisdiction is appropriate if the LMRA conveys federal-question jurisdiction. Federal-question jurisdiction is proper over any claims of breach of a CBA in violation of the LMRA, and § 301 preempts any state claims for breach of the CBA. 29 U.S.C. § 185(a); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.3d 993, 997 (9th Cir. 1987). The complaint

---

[38] Compl. – ECF No. 1-1 at 9 (¶ 23).

[39] *Id.* at 10–22 (¶¶ 24 – 91).

[40] Notice of Removal – ECF No. 1 at 2–5 (¶¶ 2, 7–14).

[41] Mot. – ECF No. 10.

[42] Consents – ECF Nos. 7, 9.

ORDER – No. 20-cv-05026-LB                                    7

here does not allege breach of the CBA and instead alleges state-law claims of racial and disability discrimination, harassment, retaliation, and the accompanying IIED.

The absence of a LMRA or breach-of-the-CBA claim in the operative complaint does not necessarily defeat removal jurisdiction. Generally federal jurisdiction requires a federal claim to be present on the face of the plaintiff's well-pleaded complaint. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). But in LMRA cases, "[u]nder the 'artful pleading' doctrine, a plaintiff cannot defeat removal of a federal claim by disguising it or pleading it artfully as a state claim. If the claim involved is one arising under federal law, the court will recharacterize the claim and uphold removal." *Madison v. Motion Picture Set Painters and Sign Writers Local 729*, 132 F. Supp. 2d 1244, 1250 (C.D. Cal. 2000) (citing *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, n.2 (1981). "Thus, a state law claim will be preempted if it is so 'inextricably intertwined' with the terms of a labor contract that its resolution will require judicial interpretation of those terms." *Id.* (quoting *Allis-Chalmer Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). "A traditional example of the artful pleading doctrine is one in which the defendant has a federal preemption defense to a state claim and federal law provides a remedy." *Sullivan v. First Affiliated Secs., Inc.*, 813 F.3d 1368, 1372 (9th Cir. 1987). "If, on the other hand, a claim seeks to vindicate 'nonnegotiable state-law rights . . . independent of any right established by contract,' then it is not preempted." *Madison*, 132 F. Supp. 2d at 1251 (quoting *Allis-Chalmer Corp.*, 471 U.S. at 213); *accord Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016).

Seven of the claims are FEHA claims involving racial and disability discrimination, harassment, and retaliation, one is a Labor Code whistleblower retaliation claim, and the final claim is for IIED. Section 301 does not preempt discrimination claims and retaliation claims, even if it is necessary to refer to the CBA to determine the terms and conditions of employment. *Miller v. AT&T Network Sys.*, 850 F.3d 543, 546 (9th Cir. 1995) (en banc); *see, e.g.*, *Schrader v. Noll Mfg. Co.*, 91 Fed. App'x 553, 555 (9th Cir. 2004) (the Ninth Circuit has "consistently held that state law discrimination claims under the FEHA do not require courts to interpret the terms of a CBA and are therefore not preempted by § 301") (collecting cases); *Detabali v. St. Luke's Hospital*, 482 F.3d 1199, 1203–04 (9th Cir. 2007) (retaliation claim under FEHA and claim of

ORDER – No. 20-cv-05026-LB                   8

1   wrongful termination in violation of public policy embodied in California's statutes are not
2   preempted); *Lencioni v. UA Local 467*, No. 16-cv-04518-JCS, 2016 WL 6069232, at *5–9 (N.D.
3   Cal. Oct. 17, 2016). The claims here turn on resolution of the employer's motives, not on an
4   interpretation of the CBA (even if those terms identify the terms of employment). *Miller v. AT&T*
5   *Network Sys.*, 850 F.3d at 546–47; *Detabali*, 482 F.3d at 1203. The IIED claim is related to the
6   unlawful conduct, and it is not preempted either. *Cramer v. Consolid. Freightways, Inc.*, 255 F.3d
7   683, 697 (9th Cir. 1992) (en banc).

  The defendants cite *Audette v. ILWU* to support their contention that the court must interpret the CBA and that § 301 thus preempts the discrimination and retaliation claims.[43] 195 F.3d 1107, 1113 (9th Cir. 1999). But that case primarily involved claims for breach of the duty of fair representation in the CBA and state claims for breach of contract and breach of the implied covenant of fair dealing. *Id.* The defendants cite *Madison* to support their argument of preemption, but the main issue in that case was whether the grievance procedures in the CBA were followed and whether the grievance had merit.[44] *Madison*, 132 F. Supp. 2d at 1253–54. Finally, they cite *Bachilla v. Pac. Bell Tel.*, a case that also challenged the employer's failure to follow the terms and conditions of the CBA. No. S-07-739 RRB KJM, 2007 WL 2825924, at *4–6 (E.D. Cal. Sept. 25, 2007).[45] By contrast, the claims here are not inextricably intertwined with the terms of the CBA, even if it is necessary to refer to the CBA to determine the terms of employment. *Detabali*, 482 F.3d 1199 at 1203.

  In sum, § 301 of the LMRA does not preempt the claims.

---

[43] Opp'n – ECF No. 11 at 15.
[44] *Id.* at 15–16
[45] *Id.* at 16.

**CONCLUSION**

The court grants the motion and remands the case to San Francisco County Superior Court.

**IT IS SO ORDERED.**

Dated: October 1, 2020

_____
LAUREL BEELER
United States Magistrate Judge